THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | 3:19-CR-0113 |
| | : | (JUDGE MARIANI) |
| DORY L. SATER, | : | |
| | : | |
| Defendant. | : | |

## MEMORANDUM OPINION

### I. INTRODUCTION AND PROCEDURAL BACKGROUND

Defendant Dory L. Sater's Motion for Relief Related to Delay in Sentencing (Doc. 148) filed on March 2, 2022, is pending before the Court. The basis of this criminal action is Defendant's filing of a false and fraudulent Mortgage Satisfaction Piece with the Luzerne County Recorder of Deeds in August 2017 that stated falsely that a $50,000 mortgage held by Fidelity Bank was satisfied and discharged in full. (*See, e.g.,* Doc. 1 at 2.) The mortgage was on Defendant's parents' house and had been used, at Defendant's request, to secure a $50,000 line of credit for Defendant's use. At trial, the fact of the filing was not disputed. Rather, Defendant contested the Government's assertion that his conduct violated the Bank Fraud statute and Aggravated Identity Theft statute.

Defendant made a Motion for Judgment of Acquittal at the close of the Government's case on November 9, 2020. (Doc. 107.) After hearing oral argument on the same date, the Court denied the motion by oral order. (Doc. 113 at 147.)

On November 10, 2020, a jury found Defendant guilty of Attempted Bank Fraud or Bank Fraud pursuant to 18 U.S.C. §§ 1344(1) and 1344(2) and Aggravated Identity Theft pursuant to 18 U.S.C. § 1028A. (Doc. 104.)

On November 16, 2020, Defendant filed the Motion for Leave to File Briefs No Later Than 14 Days After Receipt of Transcripts (Doc. 108) informing the Court that he intended to file a motion for judgment of acquittal pursuant to Federal Rule of Criminal Procedure 29 and motion for a new trial pursuant to Rule 33. (Doc. 108 at 1.)   The Court granted Defendant's motion by Order of November 17, 2020. (Doc. 109.)

On November 19, 2020, Defendant filed a Motion for a Judgment of Acquittal (Doc. 110) and a Motion for a New Trial (Doc. 111). The Government filed a motion for an extension of time to respond to the motions on December 21, 2020, which was granted by Order of December 22, 2020. (Docs. 119, 120.)  Defendant filed a motion for an extension of time to reply to the Government's response on January 25, 2021, which was granted by Order of January 26, 2021. (Docs. 124, 125.)  The motion became fully briefed and ripe for disposition on February 4, 2021, with the filing of Defendant's reply briefs. (Docs. 126, 127.) The Court denied the motions with the February 25, 2021, Memorandum Opinion and Order. (Docs. 128, 129.)

On March 31, 2021, a draft Presentence Investigation Report was issued. (Doc. 130.)  On April 14, 2021, Defendant submitted objections to the Presentence Investigation Report. (*See* Doc. 149 at 2.)

On May 13, 2021, Defendant was arrested and detained on criminal charges filed in Delaware County, Pennsylvania. (Doc. 149 at 1-2.) Defendant was charged with twenty-six counts of theft by unlawful taking, twenty-six counts of theft by Deception-False Impression, twenty-six counts of access device issued to another who did not authorize use, twenty-six counts of receiving stolen property, and twenty-six counts each of conspiracy to commit each of these offenses, for a total of 208 listed on the criminal docket. (*See* Doc. 148-5 at 2-18.) All proceeded to court. (Doc. 148-5 at 18-26.)

On May 26, 2021, the Government filed a Motion for Revocation of Presentence Release and an Arrest Warrant. (Doc. 131.) The basis for the motion was the criminal complaint filed in Delaware County. (*Id.* ¶ 6.) The Motion contains the following assertion:

> Pursuant to the criminal complaint filed against Sater in Delaware County, the United States can establish probable cause that Sater violated state or local law while on pretrial release in his federal matter. Specifically, the affidavit in support of the state criminal complaint alleges that the fraud scheme perpetrated by Sater and his coconspirator occurred from approximately December 2019 through March 2020—after Sater was subject to conditions of release in his federal case, and in advance of his trial.

(*Id.* ¶ 8.)

On June 7, 2021, the final Presentence Investigation Report and First Addendum to the Final Presentence Investigation Report were issued. (Docs. 137, 138.)

On December 10, 2021, Defendant pled guilty in state court to one count of theft by unlawful taking and one count of conspiracy to commit theft by unlawful taking. (Doc. 148-5

at 26, 32.) He was sentenced to 9-23 months of incarceration and 10 years of probation. (Doc. 149 at 3.)

On December 21, 2021, Defendant was paroled on the state charges and detained on a warrant on the instant federal offense. (*See* Doc. 144 at 1.) On December 28, 2021, Defendant was released on bond with pretrial services supervision. (*Id.*)

On January 5, 2022, Defendant appeared before Magistrate Judge Karoline Mehalchick regarding the Government's motion for detention pending a final revocation hearing in District Court. (Doc. 141 at 1.) The Government's motion was denied and Defendant was released on the conditions previously imposed by the Eastern District of Pennsylvania, including 24-hour home confinement and location monitoring. (*Id.*)

On January 19, 2022, the Second Addendum to the Final Presentence Investigation Report was issued. (Doc. 144.)

On February 7, 2022, the Court scheduled a hearing for March 17, 2022, to consider Defendant's objections to the Presentence Report with sentencing to take place immediately following the hearing. (Doc. 145.) Defendant filed a motion to continue the hearing on February 9, 2022, which the Court granted by Order of February 11, 2022. (Docs. 146, 147.) The hearing on objections and sentencing are now scheduled to take place on March 22, 2022. (Doc. 147.)

On March 2, 2022, Defendant filed the motion under consideration here. (Doc. 148.) The motion was accompanied by a supporting brief. (Doc. 149.) After requesting and

receiving an extension of time to respond to the motion (Docs. 152, 153), the Government

timely filed its response on March 18, 2022. (Doc. 155.) Because the time for filing a reply

brief has not yet passed, the motion is not ripe for disposition. However, given that

Defendant filed the motion on March 2, 2022, he did not allow time for full briefing before the

sentencing scheduled for March 22, 2022. To facilitate the Court's preference for

presentencing disposition of the pending motion, the Court will consider it without a reply

brief—a procedural path which should be acceptable to Defendant since this is a situation of

his making.

## II. ANALYSIS

Defendant contends that the sentencing in this case has been delayed to the degree

that his due process rights have been violated. (Doc. 149 at 4.) The Court disagrees.

In *Betterman v. Montana*, 578 U.S. 437 (2016), the Supreme Court explained a

convicted individual's rights at this stage of the proceedings:

> at the third phase of the criminal-justice process, *i.e.,* between conviction and
> sentencing, the Constitution's presumption-of-innocence-protective speedy
> trial right is not engaged. That does not mean, however, that defendants lack
> any protection against undue delay at this stage. The primary safeguard comes
> from statutes and rules. The federal rule on point directs the court to "impose
> sentence without unnecessary delay." Fed. Rule Crim. Proc. 32(b)(1). . .
> . Further, as at the prearrest stage, due process serves as a backstop against
> exorbitant delay. . . . After conviction, a defendant's due process right to liberty,
> while diminished, is still present. He retains an interest in a sentencing
> proceeding that is fundamentally fair.

578 U.S. at 447–48.  In her concurring opinion, Justice Sotomayor suggested using the test

the Court applies to violations of the Speedy Trial Clause set out in *Barker v. Wingo*, 707

U.S. 514 (1972):

> Under the *Barker* test, courts consider four factors—the length of the delay, the
> reason for the delay, the defendant's assertion of his right, and prejudice to the
> defendant. . . . None of the four factors is "either necessary or sufficient," and
> no one factor has a "talismanic qualit[y]." *Barker,* 407  U.S.  at  533.

578 U.S. at 451 (Sotomayor, J., concurring) (internal citation omitted).

The Third Circuit Court of Appeals applies the *Barker* factors to a sentencing phase

due process challenge.  *United States v. Lacerda*, 958 F.3d 196, 219-20 (3d Cir. 2020);

*United States v. James*, 712 F. App'x 154, 162 (3d Cir. 2017).

## A.  Length of the Delay

Quoting *James*, Defendant maintains that the sixteen-month plus period of delay

between his "conviction and sentencing 'is a problematically long period . . . and at least

opens the door to a speedy sentencing claim.'"  (Doc. 149 at 3-4 (quoting *James*, 712 F.

App'x at 162.)  In *James*, the Government conceded that the delay of fourteen months met

this standard.  712 F. App'x at 162 (citations omitted).  The Court agrees that the delay

which, in this case, exceeds sixteen months is long enough to trigger an inquiry into the

remaining *Barker* factors.  However, in balancing this factor, the Court is mindful of the

relative weight which it is to be accorded.  As the Government points out,

> the approximate 16-month period between Sater's trial and anticipated
> sentencing is on par with what the Court of Appeals deemed "'not as egregious
> as others reported,' . . . so when balanced against the other three factors, it

6

does not weigh as heavily as it might." *United States v. James*, 712 F. Appx 154, 162 (3d Cir. 2017) (non-precedential) (comparing *to Burkett v. Fulcomer*, 951 F.2d 1431, 1439 (3d Cir. 1991), where defendant had a 29-month delay before sentencing); *see also Lacerda*, 958 F.3d at 220 (deeming a 2½ year delay substantial).

(Doc. 155 at 10.)

## B. Reason for the Delay

Defendant acknowledges that he has caused some delay in this case by postponing his presentence interview to November 30, 2020, and filing a Motion to Continue Hearings. (Doc. 149 at 4.)  Defendant filed the motion on February 9, 2022, seeking a continuance of the hearing on objections to the Presentence Report and sentencing scheduled for March 17, 2022.  (Doc. 146.)  The Court granted the motion and scheduled the hearing and sentencing for March 22, 2022.  (Doc. 147.)[1]

A review of the record indicates that greater periods of delay are attributable to preparation of the draft presentence report, consideration of objections, preparation of the Final Presentence Report, and other administrative matters.  The backlog created by COVID-19 and the periodic cessation of court-proceedings is an administrative consideration of special significance during the relevant time.  Importantly, sentencing could not be scheduled until after the issuance of the Presentence Investigation Report on June 7,

---

[1] Although Defendant also filed two post-trial motions--a Motion for a Judgment of Acquittal (Doc. 110) and Motion for a New Trial (Doc. 111)--and sought to extend his time to file reply briefs to these motions (Doc. 124), delay attributable to these motions is not chargeable against Defendant in the third-phase calculation because the presentence investigation was proceeding during the pendency of the post-trial motions.  (*See, e.g.,* Doc. 121.)

2021.  (*See* Doc. 137.)  The period from June 7, 2021, to March 17, 2021,[2] approximately

nine months, is not unreasonable.  Further, the record does not show any "deliberate

attempt to delay in order to hamper the defense." *Barker*, 407 U.S. at 531.  Therefore, the

Court concludes that this factor is neutral.

## C. Defendant's Assertion of His Right

Defendant recognizes that he did not request a sentencing hearing but asserts that

this factor is not dispositive.  (Doc. 149 at 5.)  In support of the assertion, Defendant states

that

> in the due process context, where the defendant is seeking proportionate relief
> as opposed to dismissal, there is "no reason to impose blame, fault, or
> responsibility on [the defendant] for the delay, on the mere basis of the fact that
> [ ]he did not take earlier steps to be sentenced more rapidly." *United States v.*
> *Ray*, 578 F.3d 184, 200 (2d Cir. 2009). It is the government's duty, "not the
> defendant's duty, or that of h[is] attorney, to see that [ ]he is speedily
> prosecuted and sentenced." *Ray*, 578 F.3d at 200 (citing *Barker*).

(Doc. 149 at 5-6.)

While the Court agrees that no one *Barker* factor is dispositive and that a speedy trial

and reasonable sentencing schedule is not a defendant's responsibility, to the extent

Defendant relies on *Ray* to suggest that the third *Barker* factor does not weigh against him,

his reliance in misplaced.  Importantly, elsewhere in the opinion, *Ray* stressed the unique

circumstances of the case (delay of fifteen years) and observed that "[e]ven substantial

---

[2] March 17, 2022, is the date originally scheduled for sentencing which was continued to March 22, 2021, at
Defendant's request.  (*See* Docs. 145-147.)

delays in sentencing do not in all circumstances amount to a due process violation, especially when a defendant has not requested timely sentencing and is unable to establish prejudice of the sort implicated here." *Ray*, 578 F.3d at 202.

Moreover, the Supreme Court and the Third Circuit have repeatedly pointed to the importance of this factor. As stated in *Barker* regarding speedy trial rights, "the defendant's assertion of his speedy trial right . . . is entitled to strong evidentiary weight in determining whether the defendant is being deprived of the right. We emphasize that failure to assert the right will make it difficult for a defendant to prove that he was denied a speedy trial." 407 U.S. at 531-32. In *Burkett v. Cunningham*, 826 F.2d 1208 (3d Cir. 1987) ("*Burkett I*"), the Circuit Court's decision in favor of the petitioner was based in part on the fact that the petitioner had "continuously asserted his right" in the six-year period during which he was incarcerated without being sentenced. *Id.* at 1223. In *Government of the Virgin Islands v. Pemberton*, 813 F.2d 616 (3d Cir. 1987), the Circuit Court found that where the defendant's only demand for a speedy trial came in a motion to dismiss, the third *Barker* factor weighed heavily against him. *Id.* at 628. In *James*, a sentencing-phase case, the defendant filed his due process motion less than a month before the District Court began its sentencing hearing, a consideration which contributed to the assignment of "'strong evidentiary weight'" that the delay was not improper. 712 F. App'x at 162 (quoting *Barker*, 407 U.S. at 531).

Given *Barker's* emphasis that "failure to assert the right will make it difficult for a defendant to prove that he was denied a speedy trial," 407 U.S. at 531-32, and *Ray's*

conclusion that a defendant's failure to assert the violation of a right to prompt sentencing

until a month before sentencing was "strong evidentiary weight" that the delay was not

improper, 712 F. App'x at 162, the Court concludes that the third factor weighs heavily

against Defendant such that it is very doubtful he can show that he was denied the right to a

speedy sentencing.[3]

In so finding, the Court notes that, in addition to the fact that Defendant did not file a

motion related to sentencing until three weeks before the scheduled sentencing, a thorough

review of Chambers e-mail correspondence shows that Defendant's counsel never inquired

about a sentencing date or informally requested a sentencing date before the Court

scheduled a hearing on objections and sentencing by Order of February 7, 2022 (Doc. 145),

nor did Defendant's counsel thereafter request an earlier sentencing date.  The Court also

notes that evidence submitted by the Government in response to the pending motion

indicates that Defendant was specifically advised by the state court judge presiding over a

hearing conducted on December 3, 2021, that his argument to the state court that the

federal detainer lodged against him should be lifted was misplaced and that he needed to

---

[3] A concurring opinion in *Betterman* expressed hesitancy to identify the proper analytical framework
to analyze a Due Process Clause prompt-sentencing claim but noted that "a person who sleeps on
[available] remedies may simply have no right to complain that his sentencing was delayed."  578 U.S. at
450 (Thomas, J., concurring).

address the matter in federal court.[4]  (*See, e.g.*, Doc. 155-3 at 5, 17-19, 26, 32-33 (Att. 3,

Dec. 3, 2021, Hr'g Tr.).)

## D. Prejudice to Defendant

Four of Defendant's five identified claims of prejudice relate to his incarceration at

the George W. Hill Correctional Facility where he was held from his May 13, 2021, arrest

and detention on criminal charges filed in Delaware County, Pennsylvania, to approximately

December 21, 2021, when he was paroled on his state sentence after having pled guilty to

one count of theft by unlawful taking and one count of conspiracy to commit theft by

unlawful taking On December 10, 2021.[5]  *See supra* pp. 2-4.

---

[4] By way of example, at the December 3, 2021, hearing conducted by Judge Margaret J. Amoroso of the Court of Common Pleas of Delaware County, Judge Amoroso stated

> I'm denying your motion, and I'm telling you, you got to go to the fed court. You've just told me all the stuff about the federal government and the jury trial and all of this how the judge didn't even enter a judgment. That makes me think that you believe, rightly or wrongly, that that's going to resolve itself without any incarceration, and it might. It seems to me that it is incumbent upon your attorney there to work through that.

(Doc. 155-3 at 32 (Hr'g Tr. 32:18-25).)  On the subject of his federal court sentencing, Defendant told Judge Amoroso that he had not had a hearing on his sentencing-- "that hasn't happened in seven months." (*Id.* at 19 (Hr'g Tr. 19:3-4).)   After clarifying that Defendant meant the federal judge in his federal criminal matter, Judge Amoroso told Defendant "Okay, so ask him" to which Defendant responded "Okay, but he's not doing it. He's not doing it." (*Id.* (Hr'g Tr. 19:3-10).)  Defendant also indicated to Judge Amoroso that he did not believe "the feds are going to come get you," stating "[m]y lawyer has told me they're not." (*Id.* at 23 (Hr'g Tr. 23:20-23).)  The Court does not know why Defendant and his federal counsel did not heed Judge Amoroso's advice for three months.  Nor does the Court speculate as to why Defendant believed there would be no consequences to his finding of guilt in federal court.  However, Defendant's testimony at the December 2, 2021, state court hearing clearly supports the finding that the third *Barker* factor weighs heavily against Defendant.

[5] It is unclear where Defendant was held from December 21, 2021, to December 28, 2021, when he was released with pretrial services supervision on his federal charges.  (*See* Doc. 144 at 1.)

Defendant committed the state crimes to which he pled guilty while he was on pretrial release on the charges contained in the Indictment in the above-captioned matter. Following his conviction on instant federal charges, Defendant was released pending sentencing. (*See* Doc. 114 at 135-36.) Therefore, the incarceration about which Defendant complains had nothing to do with the federal conviction for which he was awaiting sentencing. Further, although Defendant was held on a federal detainer following his December 21, 2021, parole based on violations of the conditions of his release (*see* Doc. 140), he was released from custody on December 28, 2021, and has been subject to home confinement since that time (*see* Docs. 141, 144 at 1).

Turning now to Defendant's specific arguments, he first asserts that he was prejudiced because "[h]e was arrested on criminal charges filed in Delaware County, Pa., and held for failure to pay a bail amount that the county court refused to reduce, citing the federal arrest warrant (related to the government's motion to revoke Mr. Sater's presentence release) lodged as a detainer." (Doc. 149 at 6 (citing Sater Decl. ¶¶ 3 – 7 (Doc. 150-1)).)

The Court finds that this assertion does not show prejudice. Assuming *arguendo* that Defendant remained incarcerated on state charges pre-conviction in part because of the federal detainer, had Defendant been sentenced on the federal crimes of conviction before his arrest on state charges or during his pre-guilty-plea period of incarceration, he would have remained incarcerated on the federal charges of which he was convicted, one of

12

which carries a mandatory consecutive two-year term of imprisonment (*see, e.g.*, Doc. 37 ¶ 62). Therefore, earlier sentencing would not have changed Defendant's incarceration status and Defendant was not prejudiced by the delay on the basis alleged.

Second, Defendant points to the conditions of his state incarceration and compares them to those he allegedly would have experienced at a federal facility. (Doc. 149 at 5 (citing Sater Decl. ¶¶ 9-28, 31; Smith Decl. Ex. E).) With this argument, Defendant fails to acknowledge that he was NOT incarcerated after being convicted on federal charges and was incarcerated at the facility about which he complains solely on independent state charges. Importantly, Defendant's incarceration occurred less than one month after Defendant submitted objections to the Presentence Investigation Report on April 14, 2021, and almost one month before the Final Presentence Investigation Report was issued. (*See* Doc. 137, Doc. 149 at 2.) Therefore, federal sentencing and subsequent incarceration at a federal facility could not have occurred before his incarceration at the state facility, and the confinement of which he complains is unrelated to his sentencing in this case.

As a general matter, regarding postconviction incarceration *Betterman* noted that the fact "that such detention may occur in a local jail rather than a prison is of no constitutional moment, for a convicted defendant has no right to serve his sentence in the penal institution he prefers." (578 U.S. at 447 n.9.) Therefore, even if there were some tangential relationship between Defendant's confinement on state charges and the federal case for which he awaited sentencing, to find prejudice in Defendant's place of incarceration for

purposes of a Due Process Clause sentencing claim would be to inappropriately accord

constitutional significance to post-conviction detention in a local jail.

Third, Defendant claims prejudice based on his guilty plea to state charges because

"'he may have lost at least in part the opportunity for concurrent sentencing,' a recognized

form of prejudice." (Doc. 149 at 6-7 (quoting *Burkett I*, 826 F.2d at 1223-24)).  Defendant

does not explain why this is the case.  Importantly, Defendant *chose* to plead guilty to state

charges and to do so at a time of his choosing before he was sentenced on federal charges.

Therefore, any opportunity lost by choosing that course was of his own making.[6]  As, set out

above, at no time during his detention on state charges did Defendant request this Court to

schedule his sentencing on his federal charges.  *See supra* pp. 9-11.

---

[6] In connection with this claimed basis for prejudice, Defendant states the following: "To bring an end to his confinement after nearly seven months, Mr. Sater waived his right to contest the Commonwealth's charges in exchange for a guilty plea and conviction, in the hope of receiving a sentence of time-served." (Doc. 149 at 6.)  The Court agrees with the Government that this statement is emblematic of Defendant's consistent attempt to deflect attention from his personal responsibility for his actions or inactions. As stated in the Government's response to the pending motion,

> [p]erhaps most disturbingly, Sater implies that he pleaded guilty in his state case and aggravated his criminal history, despite being innocent and only so he could leave state custody and handle his federal matter. His claim here is wholly belied by his state plea colloquy and sentencing, in which he admitted, under oath, that he "did stupid things with a stupid person for good reasons," and acceded to the facts alleged in the detailed probable cause affidavit as a basis for his plea. Attachment 4 at 10 and 20. Yet again, Sater simply refuses to accept responsibility for his how actions, seeking to deflect blame wherever possible.

(Doc. 155 at 13.)

Defendant also asserts that he is prejudiced by his choice to plead guilty because the Court will consider his state court conviction under 18 U.S.C. § 3553(a) when imposing sentence. (Doc. 149 at 7.) Defendant is correct that his state court conviction will be considered under 18 U.S.C. § 3553(a). However, this again is an outcome of Defendant's own making. If, prior to his state court sentencing, Defendant had a genuine concern about his state court conviction being considered at his federal sentencing, Defendant's decision to plead guilty rather than proceed to trial on the state court charges or otherwise delay resolution of his state charges until after his federal sentencing ensured that his state court conviction would be taken into account when this Court analyzes the factors to be considered under § 3553(a) in determining an appropriate sentence.

Defendant's conviction is also a United States Sentencing Guidelines' consideration which, as Defendant recognizes, has increased his criminal history category (Doc. 149 at 7). Defendant's claim of prejudice related to his criminal history category is speculative based on the fact that the Sentencing Guidelines are advisory. Moreover, as with his concurrent sentencing and § 3553(a) arguments, the increase in his criminal history category is a result of Defendant's choice of timing to plead guilty and the consequences of the choice are his to bear.

On the issue of Defendant's claimed detriment to delayed federal sentencing, a review of the December 19, 2021, sentencing transcript shows that Defendant derived a

benefit at his state sentencing from the fact that he had not yet been sentenced in federal

court.  The attorney for the Commonwealth stated as follows:

> [t]hose [federal] counts for which he was found guilty are "attempted federal
> bank fraud and aggravated identity theft.  Because he has not yet been
> sentenced and . . . we don't know whether they're concurrent or consecutive,
> he has gotten the benefit of the doubt here essentially that he's calculated as
> a 1.

(Doc. 155-4 at 25 (Att. 4) (Dec. 10, 2021, Hr'g Tr. 25:20-25).)  Judge Amoroso agreed with

this assessment.  (*Id.* at 26 Dec. 10, 2021, Hr'g Tr. 26:1-4).)  Thus, any claim of prejudice

related to delayed sentencing is undermined by the benefit Defendant derived in his state

court sentencing due to the fact that he had not yet been sentenced on the federal charges.

Fourth, Defendant's allegations of hardship and trauma associated with his

confinement in county prison related solely to his state court charges do not show prejudice

related to his federal sentencing for the reasons set out above in response to his second

argument that confinement in federal prison would have been preferable.  *See supra* pp. 13-

14.  Further, Defendant's allegation of stress and trauma related to "the uncertainty of the

length of his future incarceration, and the postponement of the time when he can rebuild his

life" (Doc. 149 at 7) is undermined by the reality of his situation.  The length of Defendant's

future incarceration on federal charges was not exact but it was far from uncertain—he

knew from the Presentence Investigation Report issued on June 7, 2021, that Count 2

carried a mandatory concurrent two-year minimum term of imprisonment and that his

aggregate guideline range was forty-eight to fifty-four months.[7] (*See* Doc. 137 ¶¶ 61-63.)

Uncertainty regarding the length of his future incarceration would far more likely be related

to the 208 counts which were pending in state court before his December 10, 2021, guilty

plea. Either on his own or with the assistance of federal counsel, the impact of state court

proceedings and convictions on his federal sentence could also have been gauged at any

time during his county prison incarceration. Because the postponement of the time when

Defendant could rebuild his life is related to the length of his incarceration, this aspect of his

claimed stress and trauma is subject to the analysis regarding the likely length of his

incarceration which he, together with his counsel, could easily have undertaken.

Finally, Defendant asserts that his appeal rights have been prejudiced: he has

"endured the anxiety of awaiting the outcome of the appeal he intends to file in the hopes it

will clear his name"; and "in the event of reversal and retrial, his defenses have been

impaired because the witness upon whose testimony his theory of the case relies most—his

father, age 79 and recently diagnosed with cancer—is likely to either be dead or otherwise

unfit to testify." (Doc. 149 at 7 (citing *Burkett I*, 826 F.2d at 1221, 1222).) As with his other

assertions of prejudice, Defendant provides little or no analysis to support his claims.

Despite Defendant's conclusory assertion that he is entitled to relief because his

intended appeal has been delayed, the Court will briefly review how prejudice is analyzed in

---

[7] The Third Addendum to the Presentence Report (Doc. 151), issued on March 16, 2022, states that the aggregate guideline imprisonment range is forty-five to fifty-one months. (Doc. 151 at 1.)

this context.  In the case of a delayed appeal, the "prejudice" factor is broken down into

consideration of three interests:

> (1) prevention of oppressive incarceration pending appeal; (2) minimization of
> anxiety and concern of those convicted awaiting the outcome of their appeals;
> and (3) limitation of the possibility that a convicted person's grounds for appeal,
> and his or her defenses in case of reversal and retrial, might be impaired.

*Burkett I*, 826 F.2d at 1222.

Prevention of oppressive incarceration is not an interest at stake because Defendant

has only been incarcerated from December 21, 2021, to December 28, 2021, due to his

conviction on federal charges—that is, the date when he was paroled on his state

convictions to the date he was released to home confinement.  The fact that Defendant

would not have been incarcerated while awaiting sentencing but for the unrelated state

charges and detention indicates that the interest of minimizing his anxiety and concern

related to filing an appeal was diminished by his own actions rather than that of the

Government or the Court.  Finally, while it is possible that his defense may be impaired if

there should be a retrial based on Joseph Sater's age and health, this delay is a two-edged

sword in that the Government called Joseph Sater in its case in chief and it is the

Government's burden to prove its case beyond a reasonable doubt.  *See, e.g., United*

*States v. Loud Hawk*, 474 U.S. 302, 315 (1986).  Therefore, Defendant has failed to show

any prejudice on the bases alleged which would allow the Court to find that this factor

weighs in his favor.

18

In sum, upon consideration of all *Barker* factors, Defendant's failure to assert his rights and failure to show prejudice resulting from the delay in sentencing indicate that he has not shown a violation of his due process rights associated with his sentencing.

## III. CONCLUSION

For the reasons set forth above, Defendant's Motion for Relief Related to Delay in Sentencing (Doc. 148) will be denied.  A separate Order will be entered.

Robert D. Mariani
United States District Judge