THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | 3:19-CR-113 |
| | : | (JUDGE MARIANI) |
| DORY L. SATER | : | |
| | : | |
| Defendant | : | |

## MEMORANDUM OPINION

### I. INTRODUCTION

Presently before the Court is Defendant Dory Sater's Motion for Early Termination of

Supervised Release (Doc. 178), filed approximately 13 months into his 24-month term of

supervised release.[1]  The parties have fully briefed the motion (Docs. 179, 180, 182) and it

is ripe for disposition.  For the reasons that follow, Defendant Sater's motion will be denied.

### II. ANALYSIS

"[T]he primary purpose of supervised release is to facilitate the integration of

offenders back into the community rather than to punish them." *United States v. Murray*,

692 F.3d 273, 280 (3d Cir. 2012) (quoting *United States v. Albertson,* 645 F.3d 191, 197 (3d

Cir. 2012)).  Congress has thus provided the sentencing court with the authority to terminate

a defendant's term of supervised release early.  *See Burkey v. Marberry*, 556 F.3d 142, 146

n.3 (3d Cir. 2009) ("Pursuant to 18 U.S.C. § 3583(e), only the sentencing court has the

---

[1] Defendant commenced his term of supervised release on January 5, 2024.  (Doc. 178, ¶ 3; Doc.
180, at 2).

authority to modify [a defendant's] term of supervised release").  Pursuant to 18 U.S.C. §

3583, "[t]he court may, after considering the factors set forth in [18 U.S.C. §] 3553(a)(1),

(a)(2)(B), (a)(2)(C), (a)(2)(D), (a)(4), (a)(5), (a)(6), and (a)(7) . . . terminate a term of

supervised release and discharge the defendant released at any time after the expiration of

one year of supervised release, pursuant to the provisions of the Federal Rules of Criminal

Procedure relating to the modification of probation, if it is satisfied that such action is

warranted by the conduct of the defendant released and the interest of justice."  18 U.S.C. §

3583(e)(1).  "'The expansive phrases "conduct of the defendant" and "interest of justice"

make clear that a district court enjoys discretion to consider a wide range of circumstances

when determining whether to grant early termination.'"  *United States v. Melvin*, 978 F.3d

49, 53 (3d Cir. 2020) (quoting *United States v. Emmett*, 749 F.3d 817, 819 (9th Cir. 2014)).

The § 3553(a) factors cited in § 3583(e)(1) are as follows:

(1) the nature and circumstances of the offense and the defendant's history and characteristics; (2) the need to afford adequate deterrence to criminal conduct, protect the public from further crimes of the defendant, and provide him with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; (3) the kinds of sentence and sentencing range established for the defendant's crimes; (4) pertinent policy statements issued by the United States Sentencing Commission; (5) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and (6) the need to provide restitution to any victims of the offense.

*Melvin*, 978 F.3d at 53 (quoting *United States v. Davies*, 746 F.App'x 86, 88-89 (3d Cir.

2018)).  "[I]t is notable that the only traditional sentencing factor *not* relevant to a court's

decision of whether to impose supervised release . . . is the need for the sentence imposed

2

to reflect the seriousness of the offense, to promote respect for the law, and to provide just

punishment for the offense. . . . This omission reinforces the idea that the primary purpose

of supervised release is to facilitate the reentry of offenders into their communities, rather

than to inflict punishment." *Murray*, 692 F.3d at 280 (internal quotation marks, citations, and

brackets omitted).

When weighing the relevant § 3553(a) factors and considering a defendant's motion

for early termination of supervised release, "a district court need not find that an exceptional,

extraordinary, new, or unforeseen circumstance warrants early termination of a term of

supervised release before granting a motion under 18 U.S.C. § 3583(e)(1)." *Melvin*, 978

F.3d at 53.  However, "'*generally*, early termination of supervised release under §

3583(e)(1)' will be proper 'only when the sentencing judge is satisfied that new or

unforeseen circumstances' warrant it." *Id.* (quoting *Davies*, 746 F.App'x at 89) (emphasis in

*Melvin*).

In the present case, on November 10, 2020, following a six-day jury trial, Defendant

was found guilty of Attempted Bank Fraud or Bank Fraud pursuant to 18 U.S.C. §§ 1344(1)

and 1344(2) (Count I) and Aggravated Identity Theft pursuant to 18 U.S.C. § 1028A (Count

II).  (Doc. 104).  As summarized by the Third Circuit Court of Appeals in affirming the District

Court's judgment:

> Sater, a lawyer, opened his own law firm. To finance the endeavor, he obtained
> a $50,000 line of credit from Fidelity Bank using his parents' home as collateral.
> Sater soon fell behind on payments, and the bank notified his parents of the
> possibility of foreclosure of their home. Sater then resumed making regular

3

payments, only to fall behind again. After pressure from his father to remove the home from the loan, Sater forged a mortgage satisfaction document and filed it at the Luzerne County Courthouse.

Sater's father – under the mistaken belief that Fidelity no longer had a mortgage on his home – became confused when he continued to receive inquiries about the mortgage. He then obtained a copy of the satisfaction document from the courthouse and provided it to Fidelity. Heather Kazinetz, a bank representative, ordered a title search on the property and found that the bank's mortgage was not listed. She soon realized that the mortgage satisfaction document was fake because her signature on the document was forged. The bank then reported the incident to law enforcement.

Sater was interviewed by the FBI. During the interview, Sater admitted that he prepared and filed the false document because his parents were considering moving, and he wanted to give them peace of mind.

*United States v. Sater*, 2023 WL 3734962, at * 1 (3d Cir. 2023).

Relevant to the above-captioned action and Sater's current motion for early termination of his supervised release are Defendant's other criminal actions while on pre-trial release in this case. Pursuant to the Second Addendum to the Presentence Report, Sater was sentenced on December 10, 2021, in the Delaware County Court of Common Pleas for Theft by Unlawful Taking and Conspiracy to Commit Theft by Unlawful Taking. (Doc. 144, ¶ 32). Defendant's criminal conviction arose from his creation of an account purportedly on behalf of a company on December 23, 2019, resulting in his receipt of $95,591 of fraudulent funds via credit card payments and a loss of that money by the company. (*Id.*).

On March 22, 2022, this Court sentenced Sater to a term of incarceration of 36 months (consisting of 12 months on Count I and 24 months on Count 2, to run

4

consecutively), to be followed by a term of supervised release of 2 years.  (Doc. 162).  Sater

began his term of supervised release on January 5, 2024, and has now served

approximately 15-months of his 24-month supervised release term.  By counseled motion of

February 5, 2025, Defendant Sater moved for early termination of his supervised release.

(Doc. 179).

Upon consideration of the statutory factors, early termination is not "warranted by the

conduct of [Sater] . . . and the interest of justice", 18 U.S.C. § 3583(e)(1).  Defendant's

motion will thus be denied.

Here, Defendant argues that his supervised release should be terminated early for

the following reasons:

> Sater served a term in prison and is now attempting to rebuild his life since
> paying his debt to society.  At the time of sentencing, the Court imposed 19
> conditions of supervised release upon Sater to promote this rebuilding.  More
> than a year since release from prison, Sater's supervisor, United States
> Probation Officer Richard C. Clifford, has not cited any instances of non-
> compliance with these conditions.  Sater stably resides with and works as a
> caregiver for his elderly, now-widowed father in Mountain Top, PA.  And with
> respect to the remaining factors deemed relevant by Monograph 109, Sater did
> not play an aggravated role in his offenses of conviction; has no history of
> violence; has not been arrested since his release from prison; and presents no
> identifiable risk to the safety of any identifiable victim.  There is no recent
> evidence of alcohol or drug abuse or psychiatric episodes.  Sater has paid his
> special assessments in full.

(Doc. 179, at 2-3) (internal citation omitted).

Preliminarily, there is little evidence that "new or unforeseen circumstances" have arisen warranting the early termination of Defendant's supervised release.[2] The only arguably "new or unforeseen circumstance" that has arisen since the time of Sater's sentencing in 2022 is the passing of his mother and role as caregiver to his "elderly, now-widowed father". However, Sater does not assert that his supervised release prevents him from fully attending to the needs of his father or that the demands of his role as a caregiver in some manner may justify a modification or termination of his supervised release.

Further, Defendant Sater has simply done what is required of him while on supervised release, including complying with the conditions of his release and not having been "arrested since his release from prison". Mere compliance with each of the terms of his supervised release and refraining from further criminal activity does not entitle Defendant to early termination of his two-year term of supervised release. *See e.g.*, *United States v. Laine*, 404 F.App'x 571, 573-574 (3d Cir. 2010) ("Simple compliance with the conditions of supervised release are expected and not exceptional") *abrogated by United States v. Melvin*, 978 F.3d 49 (3d Cir. 2020); *United States v. Welling*, 2021 WL 409834, *4 (W.D. Pa. 2021) ("Compliance with the conditions of supervision, including refraining from

---

[2] This Court recognizes that the Third Circuit has "disavow[ed] any suggestion that new or unforeseen circumstances *must* be shown", *Melvin*, 978 F.3d at 53 (emphasis added), but it is nonetheless one of a number of factors that this Court should consider in determining the merits of Defendant's motion. *See e.g. id.* ("We think that [g]*enerally*, early termination of supervised release under § 3583(e)(1) will be proper only when the sentencing judge is satisfied that new or unforeseen circumstances warrant it. That is because, if a sentence was 'sufficient, but not greater than necessary' when first pronounced, 18 U.S.C. § 3553(a), we would expect that something will have changed in the interim that would justify an early end to a term of supervised release.") (some internal citations and quotation marks omitted) (emphasis in original).

engaging in criminal conduct, is *required* behavior while serving a term of supervised

release.") (citing *United States v. Banks*, 2015 WL 926534, at \*4 (W.D. Pa. 2015))

(emphasis in original).

Moreover, upon consideration of the nature and circumstances of the fraud and

identity theft offenses for which Sater was convicted, it is not in the interests of justice to

terminate Defendant's supervision early.  Continued supervised release also provides

possible deterrence to further criminal conduct, *i.e.* participation in another scheme to

defraud a financial institution or other corporate entity and works to aid in the protection of

members of the public, to the extent possible.  Defendant's compliance with the terms of his

supervised release and abstention from further criminal conduct since his release from

prison may, in fact, demonstrate the desired deterrent effect of the supervised release on

Defendant to refrain from engaging in further unlawful behavior.  *See e.g. United States v.*

*Miles*, 2020 WL 4904019, \*3 (W.D. Pa. 2020) ("Indeed, the fact of compliance may very well

mean that supervision is serving its deterrent and rehabilitative purposes and continuation

of it to full term will achieve its desired effects on the supervised individual and

community.").  In addition, Defendant's history and characteristics, and in particular Sater's

history of engaging in fraudulent behavior, weigh against early termination of his supervised

release.  Here, Sater, in addition to being convicted of bank fraud and aggravated identity

theft in the present action for his actions taken in 2017, was also convicted in an unrelated

criminal case of engaging in a fraudulent scheme to unlawfully obtain approximately

7

$100,000 in 2019 and 2020. These facts all support a finding that Defendant, and the public, are best served by continuing Defendant's supervised release and further aiding him in his ongoing rehabilitation.

For these reasons, and upon consideration of each of the relevant statutory factors, the specific facts and circumstances of this case, and the arguments presented in the parties' briefs, the Court finds that the purposes to be served by the imposition of supervised release by the Court have not yet been satisfied at this time. Consideration of the relevant § 3553 factors weigh in favor of requiring Sater to serve the remaining term of his supervised release. Defendant's motion will therefore be denied.

## III. CONCLUSION

For the foregoing reasons, Defendant Sater's Motion for Early Termination of Supervised Release (Doc. 178) will be denied. A separate order follows.

Robert D. Mariani
United States District Judge